[Cite as *Cuspide Properties, Ltd. v. Earl Mechanical Servs.*, 2015-Ohio-5019.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Cuspide Properties, Ltd.                                Court of Appeals No. L-14-1253

    Appellee/Cross-Appellant                       Trial Court No. CI0200805503

v.

Earl Mechanical Services, Inc.

    Appellant/Cross-Appellee

v.

Huntington Bancshares Financial Corp.,
et al.                                                 **DECISION AND JUDGMENT**

    Appellees                                      Decided:  December 4, 2015

* * * * *

Fritz A. Byers, for appellee/cross-appellant Cuspide Properties, Ltd.
and appellee Community ISP, Inc.

Erik G. Chappell and Julie A. Douglas, for appellant/cross-appellee.

* * * * *

**YARBROUGH, P.J.**

## I. Introduction

{¶ 1} This is an appeal from the Lucas County Court of Common Pleas. Appellant, Earl Mechanical Services, Inc., appeals the trial court's grant of summary judgment to appellee/cross-appellant, Cuspide Properties, Ltd. ("Cuspide"), on Cuspide's action to quiet title and liability in its slander of title action. Appellant appeals the trial court's decision to grant summary judgment to Cuspide and appellee, Community ISP, Inc. ("CISP"), on all of appellant's counterclaims. Cuspide cross-appeals the trial court's grant of summary judgment to appellant on the element of damages for its slander of title action.

## A. Facts

{¶ 2} This dispute began after appellant contracted with CISP to install air conditioning and condenser units on the property it leases from Cuspide. Appellant is owned by Jeffrey Earl and is a company providing construction services for commercial properties. Cuspide is owned by Jeffrey Klingshirn, who also serves as CEO of CISP. Dustin Wade serves as president of CISP. Appellee Huntington Bancshares Financial Corporation holds a mortgage on Cuspide's property where CISP is located.

{¶ 3} In early 2006, CISP decided to build and equip a data center on Cuspide's property. Before the construction process, CISP purchased six air conditioning units and six condensers from an unrelated third party. CISP then began receiving quotes for the

2.

mechanical work needed to connect the air conditioning units and condensers and run pipes between the units and into the building. CISP spoke to several contractors and received estimates. One such estimate was more than $100,000. After speaking with Wade, appellant gave an estimate of $47,600. The parties eventually entered into a contract for $51,100. When asked about the large price difference between the bids, Earl stated it was due to the other contractor's reliance on workers who belonged to labor unions.

{¶ 4} The job was slated to be completed by early November 2006, so CISP could have an open house to promote their new data center. After the contract was signed, but before the work was completed, Earl informed Wade additional costs above the contract price were being accrued. The two then spoke to Klingshirn over the telephone about the extra costs. Some of these costs were associated with two changes to the project that were made by CISP. One change was installing the condenser units on the roof of the building rather than on concrete pads located in the back of the building. Wade testified in his deposition, he was told by appellant this change in location would not change the cost in the project.

{¶ 5} The more significant change was the decision to change the system from a four pump system to a dual pump system produced by a company called Liebert. When CISP originally sought a quote from appellant, the estimate was based on each air conditioner and condenser having its own pump. However, after speaking with another potential contractor who suggested the dual pump system, CISP decided a dual pump

3.

system by Liebert should be installed. Wade then informed appellant of the requested changes and a new contract was drawn up.

{¶ 6} The contract between the parties makes a notation in price for four pumps, which is what was originally agreed to between the parties. A few lines later, a line item for $3,500 is listed for "Add for Liebert 7 1/2 HP pump package." Wade testified he believed that line item was referring to the dual pump system CISP wanted installed, including the labor and other costs associated with installing the system. This is supported by the change in estimates given to CISP by appellant. Appellant originally gave CISP an estimate for $47,600, but the contract between the parties was for $51,100.

{¶ 7} Earl testified in his deposition that the line item was merely the price difference between the pumps and did not account for the extra work needed to actually install the different pump system. Several engineering drawings had to be made and the units had to be manifolded together for the system to operate correctly. He testified he was unaware until much later in the project what the extra costs of installing the new system would be.

{¶ 8} The contract included a forum selection clause which required suit to be brought in Fulton County. The agreement required any changes in the scope of work to be in written change orders.

{¶ 9} Toward the end of the project, Earl informed CISP and Wade extra costs were being incurred above the contract price. Wade and Klingshirn told Earl to continue his work, as the project needed to be completed on time and the company did not have

4.

enough time to hire a new contractor. Klingshirn told Earl he should continue work and the parties would negotiate the costs later. At the time of the conversation, appellant was unaware of the exact amount of the additional costs and told Wade he would have to make some calculations before he knew the exact amount.

{¶ 10} During the construction project, Wade was generally overseeing the project. Klingshirn delegated the responsibility to Wade to ensure that the project was completed and on time. Wade continually spoke with Klingshirn about the project. Both men had the right to sign checks to pay invoices, and Wade generally got approval from Klingshirn before paying any invoices. Earl directly dealt with Wade during the course of the project except for the one incident where he spoke with Klingshirn over the phone about the extra costs of the project.

{¶ 11} Appellant completed the project in a time and manner that met the approval of CISP. Following the completion of the project, CISP paid appellant the balance of the contract which amounted to $25,500 based on an invoice from appellant. The bottom of this invoice stated extra work was still pending. CISP paid $15,520.97 in additional costs above the contracted price. Appellant then demanded an additional $47,491.97 which it claims is for the installation of the Liebert dual pump systems. In total, appellant asked CISP to pay $114,112.94 for a job which was originally contracted for $51,100. CISP refused to pay these extra costs. Consequently, appellant filed a mechanic's lien against CISP's lessee interest and Cuspide's lessor interest on January 24, 2007.

5.

## B. Procedural History

{¶ 12} On February 21, 2008, CISP and Cuspide filed a complaint in Lucas County against appellant seeking to have the lien removed and other relief. Due to the forum selection clause in the contract, the case was transferred to Fulton County. CISP and Cuspide failed to pay the necessary filing fees and the case was dismissed.

{¶ 13} On July 17, 2008, Cuspide filed a complaint against appellant seeking declaratory judgment, an order quieting Cuspide's title by removing the mechanic's lien, and damages for slander of title. Appellant moved to have the case dismissed so it could be brought in Fulton County on August 13, 2008. On November 24, 2008, the motion to dismiss was overruled, though the trial court required CISP to be involuntarily joined in the action or Cuspide would have to amend its complaint and remove its request for declaratory judgment. Cuspide filed an amended complaint on December 17, 2008, removing its request for declaratory judgment.

{¶ 14} In response, appellant filed an answer and counterclaim. CISP and Huntington were then involuntarily joined by appellant's counterclaim. The counterclaim asserted seven causes of action: breach of contract against CISP, breach of a modified contract against CISP and Cuspide, breach of a verbal contract against CISP and Cuspide, foreclosure of the mechanic's lien, intentional and negligent misrepresentation against CISP and Cuspide, unjust enrichment against CISP and Cuspide, and abuse of process against CISP and Cuspide.

6.

{¶ 15} Following discovery, Cuspide moved for summary judgment as to its quiet title claim and the liability elements of its claim for slander of title. CISP and Cuspide both moved for summary judgment as to all counts of appellant's counterclaim. Over the objection of CISP and Cuspide, and with leave of the court, appellant filed an amended counterclaim. The amended counterclaim included an agency theory between CISP and Cuspide which would make Cuspide liable on the contract between CISP and appellant.

{¶ 16} Following the amendment, CISP and Cuspide renewed their motions for summary judgment. On April 20, 2012, the trial court granted summary judgment for Cuspide on its quiet title claim and the liability elements of its slander of title claim. The trial court granted summary judgment for CISP on most of appellant's causes of action. On June 4, 2012, the trial court granted summary judgment for CISP on the remaining claims in the amended counterclaim. In this order, the trial court granted CISP fees and costs and asked CISP to enter evidence of their damages.

{¶ 17} Appellant filed a request for findings of fact and conclusions of law as well as a motion for reconsideration of the June 4 order. The motion for reconsideration was granted on September 27, 2012, and the trial court determined fees should not have been granted. The trial court reserved determining the amount of fees to be awarded to the trier of fact. The motion for findings of fact and conclusions of law was ruled moot.

{¶ 18} Appellant then moved for summary judgment as to Cuspide's slander of title claim. The trial court granted appellant's motion because Cuspide could not adequately prove its damages. Due to a fee sharing arrangement between Cuspide and

7.

CISP, Cuspide was unable to delineate which of its attorney fees were paid for its quiet title action and which were paid for its slander of title action. Cuspide was granted summary judgment as to all of appellant's counterclaims on October 31, 2014.

{¶ 19} Appellant now appeals the trial court's grant of summary judgment for CISP and Cuspide on all counts of its amended counterclaim. Appellant also appeals the denial of its motion to dismiss and its motion for findings of fact and conclusions of law. Cuspide cross-appeals the granting of summary judgment for appellant on its slander of title claim on the issue of damages.

### C. Assignments of Error

{¶ 20} Appellant presents five assignments of error for our review:

[1.] The trial court erred when it denied appellant Earl Mechanical Services, Inc.'s motion to dismiss.

[2.] The trial court erred when it granted Cuspide Properties, Inc.'s motion for summary judgment on its amended complaint.

[3.] The trial court erred when it granted appellees Community ISP, Inc. and appellee Cuspide's Properties, Inc.'s motions for summary judgment on appellant Earl Mechanical Services, Inc.'s amended counterclaims.

[4.] The trial court erred when it ordered trier of fact to determine appropriateness of an award of fees and costs to appellee Community ISP, Inc. when no such award of fees and costs was ever requested by appellee

Community ISP, Inc., nor is any award of fees and costs allowed under Ohio law.

[5.] The trial court erred when it denied appellant Earl Mechanical Services, Inc.'s request for findings of fact and conclusions of law.

{¶ 21} Cuspide brings one assignment of error for our review on its cross-appeal:

[1.] The trial court erred in entering summary judgment for Earl on Cuspide's slander-of-title claim.

## II.  Analysis

### A.  Motion to Dismiss

{¶ 22} Appellant argues that its motion to dismiss should have been granted due to the forum selection clause in the contract between appellant and CISP.  The trial court denied the motion because Cuspide was not a party to the contract that appellant is attempting to enforce.  We agree.

{¶ 23} A case can be involuntarily dismissed under Civ.R. 41(B)(1) when the plaintiff fails to prosecute or comply with a court order.  Civ.R. 41(B)(1).  The decision to grant a motion to dismiss is in the sound discretion of the trial court.  *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 47, 684 N.E.2d 319 (1997), citing *Jones v. Hartranft*, 78 Ohio St.3d 368, 371, 678 N.E.2d 530 (1997).  An appellate court's review is limited to determining if the trial court abused its discretion.  *Id.*  "The term 'abuse of discretion' as it applies to a dismissal with prejudice for lack of prosecution implies an

unreasonable attitude on the part of the court in granting [or denying] such motion."
*Jones* at 371, quoting *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982).

{¶ 24} Appellant argues that Cuspide violated the trial court's previous order to have the complaint filed by CISP and Cuspide moved to Fulton County when Cuspide filed the complaint underlying this appeal in Lucas County. However, there are several key differences between the two complaints. First, this suit was brought in the name of Cuspide only. The previous complaint, which was transferred to Fulton County, was filed by both Cuspide and CISP. Second, this suit originally did not entail the enforcement of the contract between appellant and CISP. Cuspide's amended complaint does not involve a third-party beneficiary seeking to enforce the contract between CISP and appellant. Rather, Cuspide is seeking to quiet its title to the property. Finally, Cuspide was not a party to the contract between CISP and appellant and therefore is not bound by the forum selection cause contained within the contract. The trial court did not act with an unreasonable attitude when denying the motion to dismiss. Therefore, we find appellant's first assignment of error not well-taken.

## B. Appellee Cuspide's Claims

### 1. Quiet Title

{¶ 25} Appellant's second assignment of error argues that genuine issues of material fact exist as to Cuspide's claim to quiet the title on its property. Appellant argues that it had the right to enter a mechanic's lien against Cuspide's lessor interest in

the Moffat Road property because CISP was acting as an agent of Cuspide when CISP entered into the contract with appellant.

{¶ 26} Summary judgment decisions are reviewed by the appellate court de novo, using the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). To succeed on a motion for summary judgment, a party must show (1) no genuine issues of material fact exist, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, when viewing the evidence most favorable to the nonmoving party, and that conclusion supports the moving party. Civ.R. 56(C). When a motion for summary judgment is made and supported, the opposing party then has the burden of setting forth specific facts showing there is a genuine issue for trial. Civ.R. 56(E).

{¶ 27} A cloud on a title is a defect in title "that has a tendency even in the slight degree, to cast doubt upon the owner's title, and to stand in the way of a full and free exercise of his ownership." *McClure v. Fischer Attached Homes*, 145 Ohio Misc.2d 38, 2007-Ohio-7259, 882 N.E.2d 61, ¶ 13 (C.P.). An invalid lien creates the appearance that there is an encumbrance on one's land where one does not exist. *Id*.

{¶ 28} An owner, co-owner, or lessee of real property can have a mechanic's lien entered against their interest in real property if they fail to pay for work done to improve the property. R.C. 1311.02. In order to show a valid mechanic's lien exists, a court must find that (1) a contract existed between the parties, (2) the contract provided for the labor or supplies to be delivered, (3) the labor or supplies were in furtherance of improvements

to the property, and (4) the parties contracted for payment to be made due to the improvements. *McClure* at ¶ 15.

{¶ 29} A mechanic's lien only attaches to the interest for whom the improvement is made. *Romito Bros. Elec. Const. Co. v. Frank A. Flannery, Inc.*, 40 Ohio St.2d 79, 81-82, 320 N.E.2d 294 (1974). The lien will only attach to the lessee's interest unless there was some relationship with the lessor. *Mahoning Park Co. v. Warren Home Dev. Co.*, 109 Ohio St. 358, 365, 142 N.E. 883 (1924). Generally, a person contracting to make improvements on real property is presumed to be an agent of the owner of the property unless that person is only a lessee of the property. R.C. 1311.10. Though an agency relationship is not presumed between a lessor and lessee, a lessor's interest in property can be reached by a mechanic's lien if the lessee is determined to be the agent of the lessor. *See* R.C. 1311.02. An agency relationship "exists only when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks." *Hanson v. Kynast*, 24 Ohio St.3d 171, 173, 494 N.E.2d 1091 (1986).

{¶ 30} Appellant has failed to show the existence of an agency relationship between CISP and Cuspide. Appellant claims CISP was an agent for Cuspide based mainly on the fact that Klingshirn is both CEO of CISP and owner of Cuspide. However, CISP is not an agent of Cuspide as CISP was never given any direct authority to act on behalf of Cuspide or to represent itself in that way.

12.

**{¶ 31}** CISP, Cuspide, or Klingshirn never held CISP out as an agent. Appellant only dealt with Klingshirn once during the entire process of the construction project. Appellant almost exclusively dealt with the president of CISP, Wade, during the project. Wade was solely an employee of CISP and did not represent himself in any other manner. The contract was signed between appellant and CISP. No mention of Cuspide or its business was made during the course of the parties' negotiations. Wade signed the contract acting as the president of CISP. Appellant never dealt with Cuspide as an entity or Klingshirn while he was acting as the owner of Cuspide.

**{¶ 32}** Appellant has failed to show that Klingshirn, acting as owner of Cuspide, exerted any control over CISP during the construction process. As the CEO of CISP, Klingshirn did participate in the construction project in determining which costs would be paid, and he had some discussion with the president about the project as it continued. However, appellant has failed to show how Cuspide exercised any judgment on the construction project other than by the mere fact that there is one corporate officer who is the same.

**{¶ 33}** As there is no genuine issue of material fact about whether an agency relationship existed between CISP and Cuspide, and given that such a relationship is necessary to reach the lessor interest of Cuspide, we find appellant's second assignment of error not well-taken.

13.

## 2. Slander of Title

{¶ 34} Appellant and Cuspide appeal two of the trial court's rulings on motions for summary judgment regarding Cuspide's claim for slander of title. On May 1, 2012, the trial court awarded Cuspide summary judgment on the liability elements of its slander of title claim.

{¶ 35} Following this order, both appellant and Cuspide filed competing motions for summary judgment on the issue of damages. The trial court granted appellant's motion finding no genuine issues of material fact existed as to damages because Cuspide submitted insufficient evidence of its attorney fees. Specifically, Cuspide failed to indicate which causes of action the fees related to. Appellant appeals the trial court's grant of summary judgment to Cuspide on the issue of liability, and Cuspide appeals the trial court's grant of summary judgment on damages.

{¶ 36} A slander of title claim can be "brought against any one who falsely and maliciously defames the property either real or personal, of another, and thereby causes him some special pecuniary damage or loss." *Green v. Lemarr*, 139 Ohio App.3d 414, 430, 744 N.E.2d 212 (2d Dist.2000). To prevail on a slander of title claim, the claimant must prove "(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." *Green* at 430-431.

14.

**{¶ 37}** In terms of a claim for slander of title, a person acts with malice when they act with reckless or wanton disregard of the rights of others. *Consumer Food Industries, Inc. v. Fowkes*, 81 Ohio App.3d 63, 72, 610 N.E.2d 463 (9th Dist.1991). A person does not need to act out of personal hatred to act with malice in this context. *Id*. "As a general rule, wrongfully recording an unfounded claim to the property of another constitutes slander of title." *McClure*, 145 Ohio Misc.2d 38, 2007-Ohio-7259, at ¶ 21.

**{¶ 38}** We find a slanderous statement disparaging Cuspide's title was published when the mechanic's lien was recorded by appellant. We find this statement was false, as no valid mechanic's lien was in existence against Cuspide's lessor interest. Further, the statement was a wrongful recording of an unfounded claim and thus constitutes a slander of title claim. We therefore find appellant's second assignment of error not well-taken.

**{¶ 39}** We now turn to Cuspide's cross-assignment of error, appealing the trial court's decision to grant summary judgment to appellant on the damages element of its slander of title claim. The trial court granted summary judgment in part due to Cuspide's failure to sufficiently prove its damages. Cuspide and CISP are both represented by the same counsel. By agreement, CISP is paying for the representation of both parties and Cuspide is reimbursing CISP a flat fee of $1,000 per month. The fees are not itemized or separated between Cuspide's two causes of action.

**{¶ 40}** A party may recover as special damages in a slander of title action attorney fees necessary to counteract a disparaging publication, but may not recover costs of litigation and attorney fees incurred to prosecute the slander of title action. *Green*, 139

15.

Ohio App.3d at 435, 744 N.E.2d 212. Costs and fees that were incurred removing a cloud of title are recoverable without a finding of bad faith whereas slander of title, attorney fees and costs may only be recovered if the other party acted in bad faith. *Id.*

{¶ 41} Cuspide argues the trial court erred when entering summary judgment against it because it was unable to specify which portion of the attorney's fees were paid toward the quiet title action and which were paid toward prosecuting the slander of title action. If claims can be separated "into a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded." *Bittner v. Tri-Cty. Toyota, Inc.*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991). However, there are instances where it is not always possible to divide the fees for distinct claims. Some claims will "involve a common core of facts or will be based on related legal theories" and therefore may be "difficult to divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

{¶ 42} The quiet title action and the slander of title action involve a common core of facts and are based on the same legal theory that the mechanic's lien was invalid. Both actions required proving the mechanic's lien was wrongful and that CISP was not an agent of Cuspide. The slander of title action did not require any additional information above what was needed for the quiet title action. Therefore, the trial court erred when it granted summary judgment to appellant based on the inability of CISP to differentiate its

16.

attorney fees between its two claims and therefore reverse the granting of summary judgment to appellant. Cuspide's cross-assignment of error is found well-taken.

### 3. Appellant's Counterclaims Against Cuspide

{¶ 43} Several of appellant's assignments of error and claims in its counterclaim are based on the contention that CISP was acting as an agent of Cuspide. Appellant argues that CISP was acting as an agent of Cuspide at the time of the contract for two reasons: (1) Cuspide leased the property to CISP and (2) Klingshirn is both owner of Cuspide and CEO of CISP. As stated above, we do not find a genuine issue of material fact demonstrating that CISP was acting as an agent of Cuspide, and therefore any arguments by appellant based on an agency theory are without merit. We therefore affirm the granting of summary judgment to Cuspide on all of appellant's counterclaims. We now turn to appellant's claims against CISP.

### C. Appellant's Claims Against CISP

{¶ 44} All of appellant's claims against CISP were disposed of by the trial court by granting CISP's motion for summary judgment.

### 1. Oral Modification of Contract

{¶ 45} In appellant's third assignment of error, it argues that a modification to the written contract with CISP was made by oral agreement, which CISP then breached when it failed to pay the additional $47,491.97 appellant is seeking. A contract cannot be modified unilaterally, but rather must be mutually consented to by both parties. *Fraher Transit, Inc. v. Aldi, Inc.*, 9th Dist. Summit No. 24133, 2009-Ohio-336, ¶ 12, quoting

17.

*Nagle Heating & Air Conditioning Co. v. Heskett*, 66 Ohio App.3d 547, 550, 585 N.E.2d 866 (4th Dist.1990). A written contract may be amended if the oral amendment has the essential elements of a binding contract. *Fraher,* at ¶ 12. Verbal modification of an existing contract must rest on new consideration "or must have been so far executed or acted upon by the parties that a refusal to carry it out would operate as a fraud upon one of the parties." *Id.*

{¶ 46} Here, appellant's alleged oral modification fails for lack of consideration. Consideration is a bargained for exchange between parties. *Brads v. First Baptist Church of Germantown, Ohio*, 89 Ohio App.3d 328, 336, 624 N.E.2d 737 (2d Dist.1993), citing *Software Clearinghouse, Inc. v. Intrak, Inc.*, 66 Ohio App.3d 163, 175, 583 N.E.2d 1056 (1st Dist.1990). Consideration can either be a detriment to the promisee or a benefit to the promisor. *Id.* A promise to do what one is already bound to do is not sufficient consideration for a new contract. *Shannon v. Univeral Mtge. & Discount Co.*, 116 Ohio St. 609, 621, 157 N.E.2d 478 (1927). During Earl's conversation with Wade and Klingshirn, appellant promised to complete the job it was already contractually obligated to complete. Appellant claims that continuing to work on the project despite the mounting costs serves as consideration for the new agreement between the parties. This is an incorrect claim, however, because threatening to breach a contract and then continuing to fulfill one's obligations does not serve as new consideration. The mere fact that the job cost appellant more than it originally bid does not constitute new consideration to sustain the oral modification of the written agreement. We therefore find

18.

no genuine issues of material fact exist as to the verbal modification of the written agreement between appellant and CISP. Accordingly, we find appellant's modification argument not well-taken.

## 2. Breach of New Verbal Contract

{¶ 47} Appellant argues in the alternative that a new verbal contract was created during the conversation between Earl, Wade, and Klingshirn. A contract is a promise or a set of promises that can be enforced when one person fails to fulfill the promise. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2005-Ohio-2985, 770 N.E.2d 58, ¶ 16, citing *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 798-799, 615 N.E.2d 1071 (10th Dist.1992). A contract consists of an offer, acceptance, and consideration. *Id*., citing *Perimuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 411 (N.D.Ohio 1976). Consideration is the bargained for legal benefit or detriment. *Id*. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id*., citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991). "Terms of an oral contract may be determined from words, deeds, acts, and silence of the parties." *Id*. at ¶ 15, citing *Rutledge v. Hoffman*, 81 Ohio App. 85, 75 N.E.2d 608 (1st Dist.1947), paragraph one of the syllabus.

{¶ 48} Appellant claims that the conversation between Earl, Wade, and Klingshirn created a new verbal contract for the extra costs of the project. During the conversation with Wade and Klingshirn, Earl stated that there were mounting costs above the contract price. Wade and Klingshirn stated that the project needed to be completed as there was a

19.

deadline and that the parties would sit down and figure out the total price afterward. This conversation took place several months after the contract between the parties was signed. Within this conversation, Earl only promised to complete the project he was already contractually obligated to complete. He merely told Wade and Klingshirn it was going to cost him more than he originally budgeted. Wade and Klingshirn promised to negotiate the extra costs following the project.

{¶ 49} Appellant's argument regarding the formation of a new contract fails because this "new" contract is not supported by consideration. A promise to complete an already existing obligation does not constitute consideration to support a contract. *Shannon*, 116 Ohio St. at 621, 157 N.E.2d 478. Here, all appellant promised in this conversation was to complete the project the parties had already agreed it would complete. Its only option at the point when it realized the costs would be too high would be to breach the contract and cut any potential losses. As there was no consideration to support this alleged new agreement, appellant's argument is not well-taken.

{¶ 50} Furthermore, the alleged contract fails as there was no meeting of the minds as to the essential terms of the contract between the parties. Earl told Wade and Klingshirn that he would have to get back to them as to the actual costs of the project. No terms to the "contract" were ever discussed thereafter until CISP received an invoice doubling the amount originally agreed upon. As there is no genuine issue of material fact as to whether a new verbal contract existed, we affirm the trial court's decision to grant CISP summary judgment on appellant's breach of contract claim.

20.

### 3. Foreclosure of Mechanic's Lien

**{¶ 51}** Appellant appeals the granting of summary judgment to CISP on the foreclosure of the mechanic's lien placed on CISP's lessee interest. The Ohio Revised Code allows anyone who performs labor on real property for improvements to the property to place a lien thereon to secure payment for the labor or materials expended to make those improvements. R.C. 1311.02. The work or material must be "undertaken by virtue of a contract, express or implied." *Id.* As noted above, appellant has failed to establish the existence of a contract for the additional costs it is seeking. Nonetheless, it argues that the additional costs could still be recovered under a mechanic's lien because the costs constituted extra work.

**{¶ 52}** The Ohio Mechanic's Lien Act does not require a signed change order for a contractor to recover under the Act. *Midwest Curtainwalls, Inc. v. Pinnacle 701, LLC*, 8th Dist. Cuyahoga No. 92269, 2009-Ohio-3740, ¶ 61. Also, "Ohio law has been clear for over one hundred years that when a subcontractor performs extra work on an improvement to real property, it may include such extra work in its lien claim." *Id.*, citing *Dunn & Witt v. Rankin & Co.*, 27 Ohio St. 132 (1875). A party's verbal instructions to change the project outside what was included in the specifications creates a "constructive change order" and allows for additional recovery of costs. *Id.*

**{¶ 53}** Here, despite appellant's contention, the original specifications were not changed from the contract. Appellant did not provide any extra work or materials to the project with CISP. Rather appellant's contract with CISP was to install the air

21.

conditioning and condenser units along with two dual pumps for the units. Appellant was aware of the change to the dual pump system before entering the contract as there is a notation on the contract for the price of the pumps. The Liebert dual pump system was more complicated than the single pump system that was originally discussed by the parties, but the contract clearly states that the price quote was for the Liebert system installation. As the mechanic's lien for the additional amounts was not based on a contract and did not constitute extra work provided by appellant, we find that the trial court properly extinguished appellant's mechanic lien on CISP's lessee interest in the property.

### 4. Intentional Misrepresentation

{¶ 54} Appellant also alleges that the trial court erred when it granted summary judgment for CISP on its claims of intentional and negligent misrepresentation. To succeed on an intentional misrepresentation claim, a party must show (1) a representation was made; (2) was material to the transaction at hand; (3) was knowingly false, or was made with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another party into relying on it; (5) justifiable reliance on the representation; and (6) a resulting injury proximately caused by the reliance. *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d 69, 73, 491 NE.2d 1101 (1986), quoting *Cohen v. Lamko*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984).

22.

**{¶ 55}** Appellant argues that during the conversation between Earl, Wade, and Klingshirn, Wade and Klingshirn made intentional misrepresentations to Earl about paying the additional costs of the project. During the conversation, Earl warned that extra costs were mounting on the project. Klingshirn responded by asking Earl to continue with the project and stated that the two companies would agree on costs after the work was completed. Appellant now claims that this was a misrepresentation because Wade, Klingshirn, and CISP had no intention of ever paying the extra costs. We disagree.

**{¶ 56}** A misrepresentation must be a fact rather than a promise. *RAE Assocs., Inc. v. Nexus Communications, Inc.*, 2015-Ohio-2166, 36 N.E.3d 757, ¶ 16. "'Fraud is generally predicated on a misrepresentation relating to a past or existing fact, and not on promises or representations relating to future actions or conduct.'" *Id.*, quoting *Krukrubo v. Fifth Third Bank*, 10th Dist. No. 09AP-933, 2010-Ohio-1691, ¶ 9. An exception to this rule exists, however, where an individual makes a promise concerning a future action, occurrence, or conduct, and at the time of the promise, the individual has no intention of keeping the promise. *Id.*, quoting *Williams v. Edwards*, 129 Ohio App.3d 116, 124, 717 N.E.2d 368 (1st Dist.1989). The fact that the promise was later unfulfilled is not enough to meet the burden of proving a misrepresentation in this manner. *Wall v. Firelands Radiology, Inc.*, 106 Ohio App.3d 313, 328, 666 N.E.2d 235 (6th Dist.1995), citing *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1186 (3d Cir.1993).

23.

**{¶ 57}** The record does not contain any evidence CISP had no intention of paying any additional amounts to appellant at the time the discussion between Earl, Wade, and Klingshirn took place. CISP has actually paid almost $16,000 above the contract price for additional expenses incurred by appellant. When viewing the evidence most favorable to appellant, we cannot find a genuine issue of material fact as to the claim of intentional misrepresentation.

### 5. Negligent Misrepresentation

**{¶ 58}** Appellant's claim for negligent misrepresentation also fails. A negligent misrepresentation occurs when (1) one, in the course of his or her employment, or in a transaction in which he or she has a pecuniary interest; (2) supplies false information to others in their business transactions; (3) another party justifiably relies on the information; (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information. *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 103, 742 N.E.2d 1198 (10th Dist.2000), citing *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1986). An affirmative false statement must be made for a negligent misrepresentation to be found. *Id.*, citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 149, 684 N.E.2d 1261 (9th Dist.1996).

**{¶ 59}** No genuine issues of material fact exist about whether CISP supplied false information to appellant during their transactions. When viewing the evidence in a light most favorable to appellant, the record does not reflect any false statement made by CISP or its agents during the course of the construction project. Once again, appellant claims

24.

that Wade and Klingshirn made false statements about payment of the additional costs of the project. However, the record does not show that these statements were false. CISP paid more money than the contract requires, albeit not double the contract price as appellant argues it is entitled to. Some discussion about actual costs of the project as well as the amounts CISP was willing to pay also occurred which is all CISP promised to do. We therefore find appellant's negligent misrepresentation argument not well-taken.

### 6. Unjust Enrichment

{¶ 60} Appellant also appeals the granting of CISP's motion for summary judgment on its unjust enrichment claim. Unjust enrichment occurs when "(1) a benefit is conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of that benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). However, when two competent parties contract, and no fraud or illegality is involved, unjust enrichment cannot be claimed. *Ullmann v. May*, 147 Ohio St. 468, 476, 72 N.E.2d 63 (1947). "That the terms of the agreement appear (and may work out to be) harsh may be admitted, but unless there is fraud or other unlawfulness involved, courts are powerless to save a competent person from the effects of his own voluntary agreement." *Id*. As long as the terms of the agreement are plain and unambiguous, the court will not correct the agreement between the parties, even if the contract terms are a hardship on one of the parties. *Id.*

25.

**{¶ 61}** The trial court correctly granted summary judgment in favor of CISP on the unjust enrichment claim as the parties voluntarily entered into a contractual agreement, and appellant does not claim any fraud or illegality in the contract. Further, both parties were competent at the time the contract was made. Appellant signed a contract for much less than its costs would be, but it had to at least be aware that the costs would be higher than it anticipated when Wade asked why its bid was about one-half the costs of another construction company. Though it may be a hardship on appellant, it made a voluntary agreement that must be enforced. We therefore affirm the trial court's ruling and find no genuine issues of material fact exist to support appellant's claim for unjust enrichment. Appellant's third assignment of error is found not well-taken in its entirety.

### 7. Findings of Fact and Conclusion of Law and Determination of Fees by Trier of Fact

**{¶ 62}** We combine appellant's fourth and fifth assignments of error for review. We agree with the trial court's finding that appellant's motion for findings of fact and conclusions of law was moot, as the trial court had vacated the earlier order granting fees to CISP. When questions of fact are determined by the court, a party may ask within seven days for the court's findings of fact and conclusions of law. Civ.R. 52.

**{¶ 63}** Here, the trial court denied appellant's motion for findings of fact and conclusions of law because the motion was moot. In the trial court's June 4 order granting summary judgment to CISP on appellant's counterclaims, the trial court granted fees to CISP. CISP never sought these fees in any motion. Appellant then made a

26.

motion for reconsideration and for findings of fact and conclusions of law. The trial court granted appellant's motion for reconsideration and vacated its previous order granting fees to CISP. In the same order, the trial court found appellant's motion for findings of fact and conclusions of law to be moot as the previous order was vacated. The trial court also stated in this order that any fees would be determined by the trier of fact. Appellant argues that no fees should be granted and therefore asks for findings of fact as to why the trial court stated that fees would be determined by the trier of fact.

{¶ 64} No attorney fees have been assessed in this case and the trial court did not order fees to be assessed, but merely stated that if they were to be charged against appellant, the fees would be determined by the trier of fact. There has not been a final order granting CISP any fees with regard to appellant's counterclaims. Thus, the motion for findings of fact and conclusions of law is still moot. Accordingly, appellant's fourth and fifth assignments of error are not well-taken.

## II. Conclusion

{¶ 65} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. We remand to the trial court for determination of whether Cuspide has proven damages in its slander of title action. Costs shall be assessed to appellant pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

27.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                                    JUDGE

Arlene Singer, J.

                                                             _____
Stephen A. Yarbrough, P.J.                          JUDGE
CONCUR.

                                                             _____
                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.